The opinion of the court was delivered by
Manning, C. J.
Martin Soye obtained executory process for the foreclosure of a mortgage upon a small tract of land, and the plaintiff filed a third opposition thereto, alleging that she is the owner of an undivided ninth part thereof, and that the several Acts to which she is a party, which apparently recognise the validity of the mortgage, were executed while she was a minor, and she now prays that they be annulled.
The plaintiff’s father, Nicholas Dupré, mortgaged this property to Soye in 1852, to secure the payment of $4,000.00, borrowed money. This loan appears to have been only partially paid, and in 1861 another mortgage was executed for $3,000. Dupre’s wife died after this second mortgage, and her succession was opened, her husband appointed administrator, who filed his account — placed Soye on his tableau as a mortgage creditor of the community — and exhibited a balance due to *451 each one of the children, nine in number, of $357.26. This was however provisional. Soye had not been paid, and the mortgaged property had not been sold.
The father then died, ánd the children accepted his succession unconditionally, and were put in possession of his estate. The nine heirs went before a notary, and eight of them sold to their brother, E. S. Dupre, the mortgaged property for $7,500.00, the stipulation being that the purchaser should assume the payment of the Soye mortgage, and for the residue he executed several notes to each of the heirs for their respective shares. This was in 1870.
During the previous year the plaintiff had.been emancipated by a decree of court, and in August 1873 she instituted a suit to annuli that judgment of emancipation, and it was annulled in the following month. Martin Soye was a party defendant to that suit, and so was the plaintiff’s brother to whom she, uniting with the other heirs, had sold the land, and also Adolph Dupre her under-tutor, and even the lawyer who had conducted the proceedings for emancipation, all of whom were charged with divers villainous frauds and ill-practices. They appealed suspensively from the judgment annulling the decree of emancipation.
A week after that decree had been rendered, this suit was filed. It Is based of course upon the idea that that decree would be maintained. All the proceedings in it were had while that appeal was pending in this court. The judgment was rendered in July 1875 in favour of the plaintiff, and the appeal in the other case was still pending. That appeal was finally heard in 1876, and the judgment of the lower court was reversed. Dupré v. Dupré, 28 Annual, 418.
That ends the matter now, as it ought to have ended it then. That decree, rendered in a suit to which Soye was a party, and having for its object the invalidation of his mortgage, adjudicated the matter in dispute — determined finally the legality of the decree of emancipation, and adjudged that she was competent to do those acts, the undoing of which Is the object of this suit.
But were, it otherwise, she is utterly without cause of complaint. The debt which Soye holds is the debt of her father, and has been kept alive. She accepted his succession unconditionally, or if it be assumed she was unrelieved of the disability of minority, the law accepted it for her with benefit of inventory. She has np right to any portion of the land until the debt is paid, for it is not pretended that the succession ever had any funds that might have discharged the debt. The sale to the brother by all the other heirs was manifestly a family arrangement by which it was hoped their father’s debt would be paid, and some surplus created for the heirs. The plaintiff seeks to avoid paying her share of the debt, and yet to take her share of the property.
*452 The Divine command to honour thy father and thy mother is but the echo of a sentiment that nature has planted deep in the human heart, and the laws of all countries, dealing with men’s acts and yet enforcing that sentiment, prohibit the child from taking the father’s property unless he pays the father’s debts.
The judgment of the lower court is avoided and reversed, and it is now ordered and decreed that there be judgment in favour of the defendants, and that they recover of the plaintiff their costs in the' lower court, and the costs of appeal.